UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRENT GAMBLE, an individual,<br><br>                      Plaintiff,<br><br>     v.<br><br>PACIFIC NORTHWEST REGIONAL CONCIL OF CARPENTERS; JIMMY MATTA, in his official capacity as a representative of the Regional Council; JOHN TORKELSON, in his official capacity as representative of the Regional Council and DOES 1-50, inclusive,<br><br>                      Defendants. | CASE NO. 2:14-cv-00455RSM<br><br>ORDER GRANTING MOTION TO DISMISS |

This matter comes before the Court upon Motion to Dismiss by Defendant Pacific Northwest Regional Council of Carpenters ("PNWRCC"). Dkt. # 16. PNWRCC moves to the Court to dismiss with prejudice each of the ten causes of action asserted in Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Having considered Defendant's Motion and Plaintiff's opposition thereto, as well as the remainder of the record, the Court grants Defendant's Motion and dismisses Plaintiff's operative complaint in its entirety with leave to amend several of the asserted causes of action.

## **BACKGROUND**

Plaintiff Brent Gamble filed this action on March 28, 2014 against the PNWRCC, as well as two of its named and numerous of its unnamed representatives and employees,

ORDER GRANTING MOTION TO DISMISS - 1

claiming that he was retaliated against, wrongfully terminated, and subjected to a hostile work environment on account of his race and participation in protected activity. *See* Dkt. # 1. According to Plaintiff's First Amended Complaint, Mr. Gamble was hired by the PNWRCC in November 2012 as a Representative in the PNWRCC Union headquarters in Kent, WA, and initially placed on 90 days probationary employment status after which time he would become fully vested in his position. *See* Dkt. # 13 ("FAC") at ¶¶ 12-14. Mr. Gamble asserts that "he had significant periods of satisfactory, exceeding expectations, competent and diligent performance" throughout the probationary period. *Id.* at ¶ 15. His position was nonetheless abruptly terminated on February 12, 2013 on performance grounds. *Id.* at ¶ 26.

Among his responsibilities during this period was recruiting for the "Helmets to Hardhats" federal program to promote military apprenticeship in the construction industry. FAC. at ¶ 16. Believing that his role included pursuing outreach opportunities, Mr. Gamble sent an email "feeler" to local radio station KRIZ, which traditionally serves the African-American/Black community in the Seattle area. *Id.* at ¶ 20. Mr. Gamble promptly informed Defendants of the email, who he asserts accused him of undermining the role of the PNWRCC media relations manager through his email overture. *Id.* at ¶ 24. Mr. Gamble alleges that rather than employ its progressive disciplinary policy in response to typical employee misconduct, Defendant Jimmy Matta sent Mr. Gamble a letter of termination, informing him that "after a thorough review of your performance we have determined that your services will no longer be needed." *Id.* at ¶ 26. Plaintiff alleges that the decision to terminate him was motivated by racial animus rather than legitimate, performance-based concerns. *Id.* at ¶ 27. Plaintiff was still on probationary employment status when terminated,

during which he was considered an "at will" employee subject to discharge at any time, with or without cause. *See* Dkt. # 19, Ex. 1, p. 2.[1]

Plaintiff filed the instant lawsuit following his termination, seeking declaratory and injunctive relief as well as monetary damages. Plaintiff asserts ten separate causes of action under federal and state law: (1) interference with the right to contract in violation of 42 U.S.C. § 1981, (2) subjection to a hostile work environment in violation of 42 U.S.C. § 1981, (3) unlawful retaliation in violation in 42 U.S.C. § 1981, (4) wrongful discharge against public policy in violation of the Washington Law Against Discrimination (the "WLAD"), RCW 49.60.010 *et seq.*, (5) disparate treatment discrimination in violation of the WLAD, RCW 49.60.180(3), (6) hostile work environment in contravention of RCW 59.60.180(3); (7) retaliation for opposing unfair practices in violation of RCW 49.60.210 *et seq.*, (8) tortious interference with business expectancy, (9) negligent supervision, and (10) unlawful, deceptive, and unfair business practices in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.* Defendant PNRCC now moves the Court to dismiss each of these causes with prejudice for failure to state a claim on which relief can be granted. *See* Dkt. # 16.

## DISCUSSION

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its

---

[1] PNWRCC's Personnel Policy is relied on in Plaintiff's Complaint (FAC at ¶¶ 25-27) and thus may be considered by the Court without converting this motion into one for summary judgment. *See United States v.* Richie, 342 F.3d 903, 908 (9th Cir. 2003); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where the plaintiff fails to "nudge[] [her] claims across the line from conceivable to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 570. A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, the plaintiff must provide grounds for his entitlement to relief that amount to more than labels or conclusions and extend beyond a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 545.

In making a Rule 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and draws all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). The court typically cannot consider evidence beyond the four corners of the complaint, but it may rely on documents referred to in the complaint when they are central to a party's claim and their authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Where claims are dismissed under Rule 12(b)(6), the court "should grant leave to amend…unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Leave to amend need not be granted, and dismissal may be ordered with prejudice, if amendment would be futile.

ORDER GRANTING MOTION TO DISMISS - 4

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *see also Lucas v. Dept. of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

### B. Disparate Treatment Claims

Mr. Gamble's first and fifth claims for relief allege discrimination on account of his race in violation of 42 U.S.C. § 1981 and the Washington Law Against Discrimination, RCW 49.60.180(3), respectively. Section 1981 of the Civil Rights Act of 1886 bars racial discrimination in the making and enforcement of contracts. *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). The WLAD similarly bars discrimination in the terms or conditions of employment on account of race. RCW 49.60.180(3). Both claims are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 470 F.3d 827, 837-38 (9th Cir. 2006) (affirming that Title VII substantive standards apply to a § 1981 claim); *Kastanis v. Educ. Employees Credit Union*, 122 Wash.2d 483, 859 P.2d 26, 30 (1993) (applying *McDonnell Douglas* framework to claims under the WLAD).

Under *McDonnell Douglas*, the plaintiff bears the initial burden to make out a prima facie discrimination case by showing that: (1) he is a member of a protected group, (2) he was qualified for his position (i.e. satisfactorily performing his job), (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorable, or other circumstances surrounding the adverse action give rise to an inference of discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (2004); *accord Chen v. State of Washington*, 86 Wash.App. 183, 189, 937 P.2d 612 (1997). If plaintiff makes this showing, the burden of production shifts to the defendants to "articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v.Univ. of Cal. Davis*

*Bd. of Trustees*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). If the defendants carry this burden, the plaintiff must finally prove the employer's articulated reasons to be pretextual. *Id.* at 1124. Alternatively, a plaintiff need not invoke the *McDonnell Douglas* presumption if he produces direct or circumstantial evidence demonstrating his employer's discriminatory intent. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

As an initial matter, the Court notes that Mr. Gamble has not alleged facts through which he could plausibly make a direct or circumstantial showing of discriminatory intent on the part of Defendants. While Mr. Gamble asserts that race was a "motivating factor in Defendants' intentional conduct towards and treatment of [him]", FAC at ¶ 42, he fails to assert any facts to bolster this legal conclusion. *Cf. Sparks v. South Kitsap School Dist.*, 2014 WL 1047217 (W.D. Wash. 2014) (finding that plaintiff made out a prima facie case under § 1981 where he alleged that his coworkers made racially charged remarks that went unpunished). His charge that Defendants were motivated in their treatment of him by "racial animus," FAC at ¶ 32, is a similarly threadbare allegation lacking factual support. Accordingly, the Court looks to whether Plaintiff has made out a prima facie case of disparate treatment pursuant to the *McDonnell Douglas* framework.

The PNWRCC does not dispute that Plaintiff has alleged sufficient facts to satisfy the first three prongs of his prima facie case. It does dispute, however, that his bare allegation that PNWRCC "favor[s] white representative employees," FAC at ¶ 35, is sufficient to satisfy the fourth prong. The Court agrees. Plaintiff must allege sufficient facts that, accepted as true, could demonstrate that a person outside of his protected class but similarly situated in all other material respects was treated more favorably. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2008). Plaintiff's Complaint fails to identify any similarly situated probationary employees

ORDER GRANTING MOTION TO DISMISS - 6

who were not African-American yet who were treated more favorably. *See Portfolio Investments, LLC. v. First Sav. Bank*, \*6 (dismissing 42 U.S.C. § 1981 claim where plaintiff failed to allege facts demonstrating that non-Slavic clients who were treated more favorably were similarly situated in all material respects). Mr. Gamble's bare assertion that white employees were favored does little more than recite an element of his prima facie case, and, as such, does not allow the Court to draw the inference that he was subjected to disparate treatment. *See Twombly*, 550 U.S. at 545. As Plaintiff has alleged no other facts giving rise to an inference of discrimination, his first and fifth causes of action must be dismissed.

Although the Court finds that Plaintiff's First Amended Complaint falls short of the applicable pleading standards, it does not view these deficiencies as fatal to his ability to make out a claim. As the Court does not find that amendment would be futile, it shall grant Plaintiff leave to amend both of his disparate treatment claims.

## C. Hostile Work Environment Claims

Mr. Gamble's second and sixth claims for relief, alleging that he was subject to a hostile work environment in violation of § 1981 and the WLAD while employed as a PNWRCC union representative, similarly lack factual support. In order to make it his hostile work environment claim, Plaintiff must show that: (1) he was subjected to verbal or physical conduct of a racial nature, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998); *see also Knight v. Brown*, 797 F.Supp.2d 1107, 1131-32 (W.D. Wash. 2011) (applying Title VII standards to hostile work environment claims under both § 1981 and the WLAD). "In determining whether an actionable hostile work environment claim exists, we look to all the

ORDER GRANTING MOTION TO DISMISS - 7

circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotations and citations omitted).

The Court agrees with the PNWRCC that Plaintiff has failed to allege sufficient facts to make out his hostile work environment claims. Mr. Gamble's First Amended Complaint alleges a sole instance of unwelcome conduct in support of these claims: his termination. FAC at ¶¶ 49, 50, 88. Were the Court to accept this single, independently actionable instance as sufficient to make out Plaintiff's prima facie case, it would undermine the nature of the hostile work environment cause of action. In contrast with discrimination or retaliation claims, which can be based on a single racially charged act, the hostile work environment cause of action "operates in circumstances when an independent act is not sufficient to cause distress, but a series of similar or related acts is intolerable." *Davis v. City of Seattle*, 2008 WL 202708, * 20 (W.D. Wash. 2008). Setting aside his termination, Mr. Gamble has not alleged a single instance of verbal or physical conduct of a racial nature, let alone conduct of sufficient severity and pervasiveness to alter the conditions of his employment. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2003) (holding two racial comments, two instances of yelling, and several false reports insufficient to support a hostile work environment claim); *Hua v. Boeing*, 2009 WL 1044587, *4 (W.D. Wash. 2009) (dismissing hostile work environment claim where plaintiff failed to allege conduct "related to, or even touching on, his race or national origin").

It is clear from Plaintiff's First Amended Complaint that his grievances relate to a single act allegedly motivated by discriminatory animus – his termination – which is in itself

insufficient to support a hostile work environment claim. Indeed, Plaintiff has failed to dispute Defendant's Motion pointing out this deficiency, which the Court regards as a concession that the Motion has merit. *See* LCR 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."). As it is clear that the deficiencies in Plaintiff's pleading are fatal to his ability to maintain a hostile work environment claim and could not be cured with amendment, Plaintiff's second and sixth cause of action shall be dismissed with prejudice.

**D. Retaliation Claims**

Through Plaintiff's third and seventh claims for relief, Plaintiff alleges that his termination from employment with PNWRCC was taken in retaliation for his allegedly protected actions of conducting outreach to a radio station with a predominantly African-American listening audience and opposing the denial of apprenticeship opportunities for African-American applicants. FAC at ¶¶ 63-64, 96. In order to make out a prima facie case of retaliation, plaintiff must show that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal link exists between the two. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002) (applying identical standards to retaliation claims brought under federal law and the WLAD). The Court again finds that Mr. Gamble has been unable to carry this burden.

The WLAD and Section 1981 provide protections for employees in two circumstances: (1) when an employee opposes a forbidden practice (the "opposition clause") and (2) when an employee participates in a protected proceeding (the "participation clause"). *Lodis v. Corbis Holdings, Inc.*, 172 Wash.App. 835, 848, 292 P.3d 779 (2013) (citing RCW

49.60.210); 42 U.S.C. § 2000e-3(a). The undefined term "oppose" carries its ordinary meaning: "to resist or antagonize…; to contend against; to confront; resist; withstand." *Crawford v. Metropolitan Govt. of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (quoting Webster's New Int'l Dictionary 1710 (2d ed. 1958)). The opposition clause does not require that an employee initiate or instigate a complaint; communicating one's opposition to a discriminatory activity to one's employer or refusing to follow a supervisor's orders are sufficient. *Id.* at 276-77; *see also Lodis*, 172 Wash.App. at 848 (defining "to oppose" as "to confront with hard or searching questions or objections" and "to offer resistance to, contend against, or forcefully withstand") (quoting Webster's New Int'l Dictionary 1583 (3d ed. 2002)).

Here, Mr. Gamble's retaliation claims fail at the first step. Plaintiff does not allege that he participated in any form of protected proceeding, and thus only the coverage of the "opposition clause" is at issue. Plaintiff's First Amended Complaint is devoid of facts that, accepted as true, would show that he opposed any alleged discriminatory policies or practices by asking "hard or searching questions," confronting his employers with objections, or indeed communicating his opposition in any way to his employers. *Cf. Lodis*, 172 Wash.App. at 852 (finding triable issue where employee "admonished" employer about age-related comments and "expressed his concerns" about employer to general counsel). There is nothing in Plaintiff's First Amended Complaint to suggest that his act of sending an exploratory email to KRIZ in itself constituted such oppositional activity; indeed, he alleges that he believed the email to be within his responsibilities and merely inquired about the radio station's interest in conducting outreach to its listeners. FAC at ¶ 22. There is also no allegation that any of Plaintiff's communications with PNWRCC about the email were confrontational or entailed

expressions of his discontent about discriminatory practices to his employer. Nor does Plaintiff allege any other facts from which the Court could infer that he made an affirmative report or statement, or a responsive admonition, to his employer in opposition to PNWRCC's allegedly discriminatory recruitment practices. *Cf. Sparks*, 2014 WL 1047217, *5 (identifying prima facie showing of protected activity where plaintiff alleged that he complained about racially motivated comments). Absent factual allegations that any such oppositional communications were made, Plaintiff's retaliation claims cannot pass prima facie muster and shall accordingly be dismissed.

Although Plaintiff has not directly responded to the PNWRCC's arguments pertaining to his retaliation claims, the Court shall give Plaintiff his requested leave to amend his third and seventh claims for relief. The Court is not persuaded that Plaintiff is unable to assert facts on the basis of which he could make out a plausible retaliation claim. Bearing in mind the policy in favor of liberal amendment, the Court shall dismiss Plaintiff's retaliation claims without prejudice to repleading should Plaintiff believe, in good faith, that he can make the required prima facie showing.

**E. Wrongful Discharge in Violation of Public Policy**

Plaintiff's fourth claim for relief alleges wrongful discharge in violation in Washington's public policy against race-based discrimination in employment. To maintain a common law claim for wrongful discharge, a plaintiff must prove four elements: (1) the existence of a clear public policy, (2) that discouraging the conduct in which the plaintiff engaged would jeopardize the public policy (the "jeopardy" element), (3) that the conduct caused the dismissal, and (4) that the defendant has not offered an overriding justification for

the dismissal. *Lee v. Rite Aid Corp.*, 917 F.Supp.2d 1168, 1175 (E.D. Wash. 2013) (quoting *Cudney v. ALSCO, Inc.*, 172 Wash.2d 524, 529, 259 P.3d 244 (2011)).

The Court agrees with the PNWRCC that Plaintiff is unable to satisfy the "jeopardy" element as a matter of law. A wrongful discharge claim fails as a matter of law where the public policy at issue is adequately protected by a statutory remedy. *Id.* at 1175. Here, the several sections of the WLAD that Plaintiff cites as giving rise to Washington's clear policy against race-based employment discrimination also provide adequate remedies. As Plaintiff himself points out, the WLAD proclaims the right of citizens to obtain and hold employment without discrimination based on race or other protected status and proscribes race-based discrimination in compensation or other terms or conditions of employment. RCW 49.60.030(1)(a); RCW 49.60.180(3). The WLAD further provides robust remedies for violations of these proscriptions. For instance, employers who violate these laws may be investigated by the Washington State Human Rights Commission, *see* RCW 49.60.240, and may be sued directly by the injured employee for injunctive relief, damages, attorney's fees, and costs. RCW 49.60.030(2). Because the WLAD, as well as its federal statutory corollaries, are sufficient to protect the public policy against race-based discrimination in employment, Plaintiff's common law wrongful discharge claim is barred. *See Lee*, 917 F.Supp.2d at 1176 (same conclusion for pregnancy-related discrimination in employment); *see also Cudney*, 172 Wash.2d at 538 (same result with respect to regulation of workplace safety and drunk driving).

As the Court finds that Plaintiff's wrongful discharge claim fails as a matter of law, it stands to reason that allegations of new or different facts cannot cure its deficiencies. Accordingly, Plaintiff's fourth cause of action shall be dismissed with prejudice.

### F. Tortious Interference with Business Expectancy

Plaintiff's eighth claim for relief based on Defendants' tortious interference with business expectancy also fails as a matter of law. Plaintiff alleges that Defendants intentionally interfered with his contractual relationship with PNWRCC. FAC at ¶ 103. However, an action for tortious interference lies against a third-party to a contract, not between the contracting parties themselves. *See Houser v. City of Redmond*, 16 Wash.App. 743, 746, 559 P.2d 577 (1977). That is, a "party to the contract cannot be liable in tort for inducing its own breach." *City of Seattle v. Blume*, 134 Wash.2d 243, 266 (1977) (en banc) (quoting *Olympic Fish Prods., Inc. v. Lloyd*, 93 Wash.2d 596, 598, 611 P.2d 737 (1980)). As a consequence, PNWRCC is "incapable of tortiously interfering with the employment relationship between it and its employee, [Mr. Gamble]." *Houser*, 16 Wash.App. at 746. Nor does Plaintiff's joinder of PNWRCC employees and representatives overcome this limitation. As PNWRCC's agents are alleged to be acting only in their official capacity, the actions of these defendants are privileged and cannot create liability for tortious interference. *See id.* at 747.

Accordingly, Plaintiff's eighth claim for relief shall be dismissed. Because Plaintiff's tortious interference claim fails as a matter of law, amendment would be futile and this dismissal shall be with prejudice.

### G. Negligent Supervision

It is undisputed that Plaintiff's ninth claim for relief, based on Defendants' negligent supervision, is predicated on the same facts underpinning his unlawful discrimination claims. Under Washington law, a common law tort claim, such as negligent supervision, that is duplicative of a discrimination claim must be dismissed. *See Francom v. Costco Wholesale*

*Corp.*, 98 Wash.App. 845, 966, 991 P.2d 1182 (2000) (affirming dismissal of negligent supervision claim that relied on the same underlying facts supporting plaintiffs' discrimination claim); *Ellorin v. Applied Finishing Inc.*, 2014 WL 498969, *18 (W.D. Wash. 2014). Accordingly, Plaintiff's negligent supervision claim shall be dismissed. As Plaintiff has failed to respond to Defendants' arguments pertaining to his negligent supervision claim and as his claim is barred as a matter of law where, as here, it is duplicative of his discrimination claims, the Court finds that leave to amend would be futile. Plaintiff's ninth claim for relief shall therefore be dismissed with prejudice.

### H. Washington Consumer Protection Act

Mr. Gamble's final claim for relief alleges that Defendants engaged in unfair and deceptive practices during the scope of his employment in violation of the CPA, RCW 19.86 *et seq*. This claim too fails as a matter of law, as the Washington legislature has specifically excluded practices "committed by an employer against an employee or a prospective employee" from the scope of the CPA. RCW 49.60.030(3); *see also Baxter v. National Safety Council*, 2006 WL 2473467, * 4 (W.D. Wash. 2006) (dismissing CPA claim because the "employer-employee relationship is not considered to fall within the definition of 'trade or commerce.'"). Though Plaintiff correctly argues that the CPA is to be liberally construed, *see Panag v. Farmers Ins. Co.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009), he has failed to assert any basis for this Court to circumvent the express intent of the legislature. As the Court can identify none, Plaintiff's tenth claim for relief shall be dismissed. Because this claim fails as a matter of law, the Court finds that leave to amend would be futile, and this dismissal shall be with prejudice.

# CONCLUSION

For the reasons provided herein, the Court hereby ORDERS that Defendant's Motion to Dismiss (Dkt. # 16) shall be GRANTED. Plaintiff's First Amended Complaint shall be dismissed in its entirety. This dismissal shall be with prejudice with respect to Plaintiff's hostile work environment claims, wrongful discharge claim, tortious interference claim, and negligent supervision claim. Dismissal shall be without prejudice with respect to Plaintiff's disparate treatment and retaliation claims under the WLAD and 42 U.S.C. § 1981 (Claims 1, 3, 5, and 7).

With respect to Plaintiff's First, Third, Fifth, and Seventh Claims for Relief only, Plaintiff is granted leave to file a second amended complaint within twenty (20) days of the entry of this Order. Failure to do so within the time limit set by the Court shall result in the dismissal of this action with prejudice.

DATED this 28 day of January 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE