1
2
3
4
5
6

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

7
8

BRENT GAMBLE, an individual,

Plaintiff,

9

v.

10

PACIFIC NORTHWEST REGIONAL CONCIL
OF CARPENTERS; JIMMY MATTA, in his
official capacity as a representative of the
Regional Council; JOHN TORKELSON, in
his official capacity as representative of the Regional
Council and DOES 1-50, inclusive,

11
12
13

Defendants.

14

CASE NO. C14-455 RSM

ORDER GRANTING MOTION TO
DISMISS PLAINTIFFS SECOND
AMENDED COMPLAINT

15        This matter comes before the Court upon Motion to Dismiss Plaintiff's Second

16   Amended Complaint by Defendant Pacific Northwest Regional Council of Carpenters

17   ("PNWRCC"). Dkt. # 32. This Court granted PNWRCC's prior motion to dismiss Plaintiff's first

18   amended complaint, albeit with leave to amend his disparate treatment and retaliation claims

19   brought under state and federal law. Having considered the parties' memoranda, the relevant

20   record, and oral arguments by counsel, the Court grants Defendant's Motion and now

21   dismisses Plaintiff's Second Amended Complaint with prejudice.

22

23                                    **BACKGROUND**

24        The facts as asserted in Plaintiff's Second Amended Complaint are substantially similar

25   to those set forth in the Court's prior Order of dismissal. *See* Dkt. # 12. Plaintiff Brent Gamble

26

ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT- 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

filed this action on March 28, 2014 against the PNWRCC, as well as two of its named and

numerous of its unnamed representatives and employees, claiming that he was retaliated

against, wrongfully terminated, and subjected to a hostile work environment on account of his

race and participation in protected activity. *See* Dkt. # 1. Mr. Gamble's Second Amended

Complaint alleges that his employment with the PNWRCC began on November 11, 2012 as a

Representative in the PNWRCC Union headquarters in Kent, WA, where he was placed on 90

days probationary employment status after which time he would become fully vested in his

position. *See* Dkt. # 27 (SAC) at ¶¶ 11-13. Mr. Gamble asserts that "he had significant periods

of satisfactory, exceeding expectations, competent and diligent performance" throughout the

probationary period. *Id.* at ¶ 15. Mr. Gamble alleges that his position was nonetheless abruptly

terminated on February 12, 2013, four days after he would have fulfilled his 90-day

probationary status, under the pretext of performance-related grounds. *Id.* at ¶¶ 15, 26.

     Among Mr. Gamble's responsibilities during this period was recruiting for the "Helmets

to Hardhats" federal program to promote military apprenticeship in the construction industry.

*Id.* at ¶¶ 17, 20. Believing that his role included pursuing outreach opportunities, Mr. Gamble

sent an email "feeler" to local radio station KRIZ, which traditionally serves the African-

American community in the Seattle area. *Id.* at ¶ 20. Mr. Gamble promptly informed

Defendants of the email, including his supervisor, Defendant John Torkelson. *Id.* at ¶ 22. Mr.

Gamble asserts that Defendants "reacted with extreme punitive measures," accusing him of

"going outside the chain of command and undermining the PNWRCC media relations

manager," who was not in the workplace to approve the email "feeler" due to health reasons. *Id.*

at ¶ 24.

ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT- 2

1    Mr. Gamble alleges that rather than employ its progressive disciplinary policy in

2    response to typical employee misconduct, the PNWRCC decided to terminate his employment

3    immediately.  Defendant Jimmy Matta's letter, informing Mr. Gamble of the disciplinary

4    decision, stated that "after a thorough review of your performance we have determined that

5    your services will no longer be needed." *Id.* at ¶ 26. Plaintiff alleges that the decision to

6    terminate his employment was motivated by racial animus towards his efforts to increase the

7    diversity of the apprenticeship program's applicant pool, rather than by legitimate,

8    performance-based concerns. *Id.* at ¶ 27. It is disputed whether Plaintiff was still on

9    probationary employment status when terminated. Either way, Mr. Gamble was considered an

10   "at will" employee subject to discharge at any time, with or without cause. *See* Dkt. # 19, Ex. 1,

11   p. 2.[1]

12

13   Plaintiff filed the instant lawsuit following his termination, seeking declaratory and

14   injunctive relief as well as monetary damages. On January 29, 2015, the Court entered an

15   Order dismissing Plaintiff's First Amended Complaint in its entirety and providing leave to

16   amend solely with respect to Plaintiff's claims for disparate treatment and retaliation under the

17   Washington Law against Discrimination ("WLAD"), RCW 49.60.010 *et seq.* and 42 U.S.C. §

18   1981. Plaintiff timely filed his operative Second Amended Complaint, which alleges six

19   causes of action: (1) disparate treatment discrimination in violation of § 1981, (2) unlawful

20   retaliation in violation of § 1981, (3) disparate treatment discrimination in violation of the

21   WLAD, (4) unlawful retaliation in violation of the WLAD, (5) breach of contract under §

22   1981, and (6) discrimination in violation of Title VI of the Civil Rights Act of 1964, 42

23

24   _____

25   [1] Defendant asks the Court, without objection by Plaintiff, to take judicial notice of PNWRCC's Personnel Policy. *See* Dkt. # 32, p. 5 n. 2. PNWRCC's Personnel Policy is relied on in Plaintiff's Second Amended Complaint and is thus properly considered by the Court without converting this motion into one for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

26

ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT- 3

1    U.S.C. § 2000d *et seq*. *See* SAC. Defendant again moves to dismiss each cause of action with

2    prejudice for failure to state a claim on which relief may be granted. *See* Dkt. # 32.

3                                    **DISCUSSION**

4    **A.  Legal Standard**

5            To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

6    sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"

7    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

8    570 (2007)). Where the plaintiff fails to "nudge[] [her] claims across the line from conceivable

9    to plausible, [her] complaint must be dismissed." *Twombly*, 550 U.S. at 570.  A claim is

10   facially plausible if the plaintiff has pled "factual content that allows the court to draw the

11   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

12   678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

13   statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, the plaintiff

14   must provide grounds for her entitlement to relief that amount to more than labels or

15   conclusions and extend beyond a formulaic recitation of the elements of a cause of action.

16   *Twombly*, 550 U.S. at 545.

17           In making a Rule 12(b)(6) assessment, the court accepts all facts alleged in the

18   complaint as true, and draws all inferences in the light most favorable to the non-moving

19   party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal

20   citations omitted). The court typically cannot consider evidence beyond the four corners of

21   the complaint, but it may rely on documents referred to in the complaint when they are central

22   to a party's claim and their authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448

23

24

25

26

ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT- 4

1   (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States*

2   *v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

3       **B. Disparate Treatment Claims**

4       Mr. Gamble's first and third claims for relief allege discrimination on account of race

5   in violation of 42 U.S.C. § 1981 and the WLAD, respectively. Both claims are governed by

6   the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

7   (1973). *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 470 F.3d 827, 837-38

8   (9th Cir. 2006) (affirming that Title VII substantive standards apply to § 1981 claims);

9   *Kastanis v. Educ. Employees Credit Union*, 122 Wash.2d 483, 859 P.2d 26, 30 (1993)

10  (applying *McDonnell Douglas* framework to claims under the WLAD). Under this

11  framework, the plaintiff bears the initial burden to allege facts supporting the elements of a

12  prima facie case of discrimination. *Id.* at 1182 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*,

13  450 U.S. 248, 252-53 (1981)). If the plaintiff makes this showing, the burden shifts to the

14  defendant to offer evidence of a nondiscriminatory reason for the adverse action, and then

15  again to the plaintiff to demonstrate that the proffered reason is mere pretext. *Id.*

16      A prima facie case of disparate treatment discrimination requires the plaintiff to

17  demonstrate that: (1) he is a member of a protected class, (2) he was qualified for his position

18  (i.e. satisfactorily performing his job), (3) he suffered an adverse employment action, and (4)

19  similarly situated employees outside the protected class were treated more favorably, or other

20  circumstances surrounding the adverse action exist that give rise to an inference of

21  discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th 2004); *accord Chen*

22  *v. State of Washington*, 86 Wash.App. 183, 189, 937 P.2d 612 (Wash. Ct. App. 1997).

23  Alternatively, a plaintiff need not invoke the *McDonnell Douglas* presumption if he produces

ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT- 5

direct or circumstantial evidence demonstrating his employer's discriminatory intent. *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).

The Court begins by analyzing whether Mr. Gamble's Second Amended Complaint satisfies the four required prongs of his prima facie case. While Defendant does not dispute that the first three prongs are met in this case, it again argues that Plaintiff's failure to plead the existence of a legally cognizable comparator is fatal to his disparate treatment claims. The Court agrees.

Absent evidence of other circumstances giving rise to an inference of discrimination, Mr. Gamble must plead the existence of one or more valid comparators. *Peterson*, 358 F.3d at 603. As the Court explained in its prior Order of dismissal, doing so requires that Plaintiff allege sufficient facts that, accepted as true, could demonstrate that a person outside of his protected class but similarly situated in all other material respects was treated more favorably. *See Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2008). This test is a stringent one. *Blair v. Alaskan Cooper and Brass Co.*, 2009 WL 2029963, *7 (W.D. Wash. 2009) (citing *Moran*, 447 F.3d at 754).

Here, the sole comparator that Plaintiff has specifically pointed to in his operative complaint, through his opposition brief, or at oral argument is Mr. Turkelson. SAC at ¶ 30. Yet as his supervisor, Mr. Turkelson cannot be said to be similarly situated to Mr. Gamble with respect to disciplinary matters. *See Vasquez*, 349 F.3d at 641 ("Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees."). Nor does Plaintiff allege that Mr. Turkelson or any other employee engaged in a comparable act of asserted misconduct. *See id.* Again, Plaintiff's bare allegation that he was treated unfavorably

ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT- 6

relative to unnamed non-Black employees, SAC at ¶ 30, merely recites an element of his

prima facie and must consequently be discarded at the Rule 12(b)(6) stage. *See Iqbal*, 556

U.S. at 679.

Aside from the existence of a valid comparator, Plaintiff fails to point to any direct or

circumstantial evidence of discriminatory intent. Plaintiff's operative complaint states no

allegations of overheard derogatory statements or other direct evidence that could prove the

fact of discriminatory animus without inference or presumption. *Cf. Godwin v. Hunt Wesson,*

*Inc.*, 150 F.3d 1217, 1221-22 (9th Cir. 1998) (locating direct evidence of sex discrimination in

statement by defendant's national sales manager that he "did not want to deal with another

female"); *Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149-50 (9th Cir. 1997)

(locating direct evidence of race discrimination where employer referred to a Mexican-

American employee as a "dumb Mexican"). Nor does Plaintiff point to any circumstantial

evidence from which the Court could infer discriminatory intent. *Cf. Jauregui v. City of*

*Glendale*, 852 F.2d 1128, 1134-35 (9th Cir. 1988). As Plaintiff has failed to make out his

prima facie case of racial discrimination, his disparate treatment claims must therefore again

be dismissed.

**C. Retaliation Claims**

Through his second and fourth claims for relief, Plaintiff alleges that his termination

from employment with the PNWRCC was taken in retaliation for his outreach to a radio

station with a predominantly African-American listening audience and for his opposition to

the denial of apprenticeship opportunities for African-American applicants. SAC at pp. 13-14,

16-17. As Plaintiff's Second Amended Complaint is virtually identical to his previously

dismissed First Amended Complaint with respect to his retaliation claims, the Court dismisses

Plaintiff's renewed claims.

In order to make out a prima facie case of retaliation, Mr. Gamble must show that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal link exists between the two. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994); *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002) (applying identical standards to retaliation claims brought under federal law and the WLAD). In other words, as the Court explained in its prior Order of dismissal, Plaintiff must allege facts that, accepted as true, would show that he engaged in an act of opposition to an allegedly discriminatory policy or practice, which in turn incited the retaliation against him.[2] This act of opposition could be met by showing that Plaintiff asked "hard or searching questions," confronted his employers with objections, or in some way communicated his opposition to a discriminatory policy or practice to his employers. *See Lodis v. Corbis Holdings, Inc.*, 172 Wash.App. 835, 292 P.3d 779 (2013).

Here, Plaintiff points to no asserted act of opposition other than his sending of an exploratory email to KRIZ. There is no allegation that this communication, or any communication to Plaintiff's supervisors surrounding it, was confrontational. To the contrary, Plaintiff immediately informed his supervisors of his email overture, evidently anticipating that his initiative in reaching out to KRIZ would be celebrated. Although Mr. Gamble asserts that he opposed discriminatory hiring practices in the apprenticeship program, he has not pled any act through which he made his opposition known to his employers. Further, Mr. Gamble has failed to respond to the PNWRCC's argument that his pleading are lacking in this respect,

---

[2] As the Court determined in its prior Order, Plaintiff again does not plead that he participated in a protected proceeding. Thus, only the "opposition clause" of the WLAD and Section 1981 is at issue. *See* RCW 49.60.210 & 42 U.S.C. § 2000e-3(a) (protecting an employee from being retaliated against for opposing a forbidden practice).

ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT- 8

which can itself can construed as an admission that Defendant's Motion has merit. *See* LCR 7(b)(2). For all these reasons, Plaintiff's retaliation claims shall again be dismissed.

**D.  Breach of Contract Claim**

The Court previously dismissed with prejudice Plaintiff's tortious interference claim, which Plaintiff is apparently now endeavoring to resurrect in the form of a breach of contract claim. Through his fifth claim for relief under § 1981, Plaintiff pleads that he had completed his probationary period when terminated and was thus "entitled to enjoy the fully vested benefits of his contract with Defendant Union[.]" SAC at ¶ 75. However, regardless of probationary status, all PNWRCC employees are employed on an "at will" basis, subject to termination at any time with or without cause. Dkt. # 19, Ex. 1, p. 2. As an at-will employee, Mr. Gamble could not have had a legitimate business or contractual expectancy in his continued employment. *Woody v. Stapp*, 146 Wash.App. 16, 24, 189 P.3d 807 (Wash. Ct. App. 2008) ("Generally, at-will employees do not have a business expectancy in continued employment."). The PNWRCC's progressive disciplinary policy also provides it the "right to terminate an employee immediately even for one act of misconduct," including for an act of "insubordination." Dkt. # 32, Ex. A, ¶¶ 8.1, 8.3.

Because Plaintiff had no contractual right to either continued employment or progressive discipline in lieu of termination, his Fifth Claim for relief shall be dismissed as a matter of law. Again, Plaintiff's failure to respond at all to the PNWRCC's arguments as to this claim is construed as an admission that they have merit. LCR 7(b)(2).

**E.  Title VI Discrimination Claim**

Finally, Plaintiff's Sixth Claim for relief pleads discrimination under Title VI of the

ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT- 9

Civil Rights Act. As the PNWRCC points out, this claim is ambiguously pled: it is unclear whether Plaintiff's claim is directed solely toward his own termination or whether he seeks to represent prospective apprentices in challenging the PNWRCC's allegedly discriminatory hiring policy. At oral argument, Plaintiff clarified that he sought to plead only the former.

Title VI of the Civil Rights Act provides that "[n]o person in the United States shall, on ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To make out his claim, Plaintiff must show that the entity involved is engaging in racial discrimination and that the entity is the recipient of federal funding. *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001). A private individual may sue to enforce Title VI only in instances of intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001). In the Ninth Circuit, a private plaintiff's Title VI disparate treatment claim is analyzed under the same *McDonnell Douglas* burden-shifting framework that apply to Title VII and similar claims. *Rashdan v. Geissberger*, 764 F.3d 1179, 1182-83 (9th Cir. 2014).

For the reasons set forth with respect to his Section 1981 and WLAD disparate treatment claims, Plaintiff has also failed to make out a prima facie case of intentional discrimination with respect to his Title VI claim. Although Mr. Gamble pled that the PNWRCC receives federal funds, the complete lack of direct or circumstantial evidence in his Second Amended Complaint indicating that racial bias motivated the PNWRCC's decision to terminate his employment is fatal to his Title VI claim. *See Joseph v. Boise State Univ.*, 998 F.Supp.2d 928, 944 (D. Idaho 2014) (citing *Quintero v. Clovis Unified School Dist.*, 2013 WL

ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT- 10

3198767 (E.D. Cal. 2013). Plaintiff's threadbare allegations and personal belief that the PNWRCC discriminated against him on the basis of his race, *see* SAC at ¶ 85, are purely conclusory and are therefore insufficient to state a "plausible claim to relief." *See Iqbal*, 556 U.S. at 679; *see also Joseph*, 998 F.Supp.2d at 945. The Court may not permit a complaint to survive the motion to dismiss stage where, as here, its allegations suggest the mere "possibility"– rather than plausibility–of misconduct. *Id.*

Finally, to the extent that Plaintiff did intend to plead a third-party representative claim challenging the Council's allegedly discriminatory practices in regards to recruitment of minority apprentices, he has failed to show in his pleadings that he has standing to do so.

"Although federal courts take a broad view of constitutional standing in civil rights cases, a civil rights plaintiff claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating [his] standing to sue at each stage of the litigation." *Wood v. City of San Diego*, 678 F.3d 1075, 1083 (9th Cir. 2012). Plaintiff must accordingly show that he suffered an injury in fact, that this injury was traceable to the PNWRCC's actions, and that it can be redressed by a favorable decision. *Id.* Plaintiff must thereby demonstrate that he has a sufficiently concrete interest in the outcome of the issue in dispute (here the failure to hire minority apprentices) by virtue of his own injury. *See Thomas v. Mundell*, 572 F.3d 756, 763 (9th Cir. 2009). For instance, in *McCollum*, the Supreme Court held that the State of Georgia had third-party standing to raise the equal protection rights of jurors improperly excluded from a jury by a criminal defendant's discriminatory use of peremptory challenges. *Georgia v. McCollum*, 505  U.S. 42 (1992). The Court held in so ruling that a state suffers a cognizable injury for standing purposes because racial discrimination in the selection of jurors "casts doubts on the integrity of the judicial process"

and on the fairness of criminal proceedings. *Id.* at 56 (internal quotation omitted).

The problem with a representative claim in this case is that Plaintiff has not shown that the sole injury he alleges – his termination – is traceable to the PNWRCC's alleged discrimination against minority apprentices. It is not clear that were the PNWRCC to hire more minority apprentices, for instance, Plaintiff's own employment prospects as a union representative would be redressed. While Plaintiff may have a general interest in seeing more minority apprentices hired, he must show that this interest relates directly to his injury, or, in other words, that he himself is being injured by virtue of discriminatory hiring practices against the apprentices. This he has not done. Further, Plaintiff's allegation that the PNWRCC was discriminating against African-American apprenticeship applicants is conclusory at best and not in itself sufficient to pass Rule 12(b)(6) muster. Plaintiff's Title VI intentional discrimination claim shall accordingly be dismissed.

**F. Leave to Amend**

The sole remaining issue is whether to permit Plaintiff leave to again amend his pleadings. Where claims are dismissed under Rule 12(b)(6), the court "should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Leave to amend need not be granted, and dismissal may be ordered with prejudice, if amendment would be futile. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *see also Lucas v. Dept. of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

Here, Plaintiff has proven the futility of allowing amendment of his disparate treatment and relation claims. His Second Amended Complaint is substantially identical to his first with respect to these claims and fails to correct the deficiencies previously identified by

the Court. Plaintiffs' First through Fourth and Plaintiffs' Sixth Claims for Relief shall accordingly be dismissed with prejudice. *See Ebeid ex. rel. U.S. v. Lungwitz*, 616 F.3d 993, 1001 (9th Cir. 2010) (affirming dismissal with prejudice of second amended complaint). Because Plaintiffs' newly added breach of contract claim fails as a matter of law, it too shall be dismissed with prejudice as it is clear that it could not be saved by amendment. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

## CONCLUSION

For the reasons stated herein, the Court hereby ORDERS that Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. # 32) is GRANTED. Plaintiffs' Second Amended Complaint is hereby DISMISSED with prejudice and without leave to amend. This case shall be CLOSED.

Dated this 28th day of May 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE